FILED
United States Court of Appeals
Tenth Circuit

June 12, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

        No. 08-2191

ALEJANDRO BELTRAN,

        Defendant - Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. 2:07-CR-2132-001-WJ)**

Erlinda O. Johnson, Law Office of Erlinda Ocampo Johnson, LLC, Albuquerque, New Mexico, for Defendant - Appellant.

David N. Williams, Assistant United States Attorney, (Gregory J. Fouratt, United States Attorney for the District of New Mexico, with him on the brief), Albuquerque, New Mexico, for Plaintiff - Appellee.

Before **KELLY** and **LUCERO**, Circuit Judges, and **EAGAN**,[*] District Judge.

**EAGAN,** District Judge.

---

[*]The Honorable Claire V. Eagan, United States District Judge for the Northern District of Oklahoma, sitting by designation.

Defendant-Appellant Alejandro Beltran pled guilty to conspiracy to distribute 100 grams of more of heroin in violation of 21 U.S.C. § 846 and was sentenced to 151 months in prison. On appeal, Defendant contends that the district court erred when it denied his motion for a variance based on alleged sentencing factor manipulation. He argues that the district court was not bound by the more rigid standard for a downward departure for claims of outrageous governmental conduct, and the district court should have exercised its discretion under *United States v. Booker*, 543 U.S. 220 (2005), and the 18 U.S.C. § 3553(a) factors to vary downward from the applicable guideline range. He also contends that the district court erred by enhancing his sentence for his role in the offense and for possession of a firearm.

We have jurisdiction under 28 U.S.C. § 1291 and affirm. We hold that Defendant's request for a variance was not governed by the pre-*Booker* standard for a departure for outrageous governmental conduct, but the district court did not abuse its discretion by imposing a sentence within the applicable guideline range. We further hold that the district court did not err in its application of the sentencing guidelines.

I.     BACKGROUND

On October 23, 2007, a grand jury returned a twenty-two count indictment against Defendant and five others. The indictment resulted from a joint investigation of the Federal Bureau of Investigation (FBI) and the Drug

Enforcement Agency (DEA) known as Operation Brown Sugar. Count One of the indictment alleged that Defendant conspired with others to distribute more than one kilogram of heroin in violation of 21 U.S.C. § 846. Specifically, the defendants were charged with conspiring to import heroin from Mexico with the use of altered shoes to conceal the heroin during transport, and distributing the heroin in Albuquerque, New Mexico. On November 21, 2007, pursuant to a plea agreement, Defendant pled guilty to an information charging him with conspiracy to distribute 100 grams or more of heroin in violation of 21 U.S.C. § 846. Under 21 U.S.C. § 841(b)(1)(B), Defendant faced a mandatory minimum sentence of five years and a statutory maximum sentence of 40 years.

Before the sentencing hearing, a presentence investigation report (PSI) was prepared. The PSI stated that Defendant's base offense level was 32 due to the stipulated drug quantity in the plea agreement. The probation officer recommended a two level enhancement under § 2D1.1(b)(1) of the United States Sentencing Guidelines (USSG) for possession of a firearm during a drug trafficking offense, but the PSI did not contain an enhancement for Defendant's role in the offense under USSG § 3B1.1. Defendant received a three level decrease for acceptance of responsibility. Based on these findings and Defendant's criminal history category of I, the PSI recommended a total offense level of 31 and a sentencing range of 108 to 135 months. Defendant requested a downward variance, and objected to the two-level enhancement for possession of

a firearm on the ground that he was the victim of outrageous governmental conduct because government agents allegedly engaged in conduct for the specific purpose of enhancing Defendant's sentence. The government objected to the PSI because it did not include an enhancement for Defendant's role in the offense, and requested a four-level enhancement under USSG § 3B1.1.

At the sentencing hearing on July 28, 2008, the government offered the testimony of three witnesses who participated in the investigation. Officer Mizel E. Garcia of the Albuquerque Police Department testified that he participated in undercover operations in coordination with the DEA. He participated in a controlled buy of heroin from Defendant and a co-conspirator, Rueben Mendez-Zavala, on August 31, 2007, and another officer reported to Officer Garcia that he observed that Defendant was armed with a small caliber handgun during the transaction. FBI Special Agent James Kraus testified that investigators intercepted telephone calls, by means of a wiretap, between Defendant and persons identified as "mom" and "dad" to arrange shipments of heroin to the United States. Special Agent Kraus testified that, when Defendant was arrested on October 23, 2007 following a controlled buy, agents recovered a .40 caliber Smith & Wesson automatic handgun from Defendant's jacket pocket. Defendant concealed the handgun during the controlled buy and agents were not aware of the handgun until they searched Defendant following his arrest. New Mexico State Police Officer Miguel Mendez testified that he made undercover buys from

Defendant and specifically set up a controlled buy for October 23, 2007. He arranged the controlled buy for that date with the intention that Defendant would be arrested following the transaction, but he did not ask Defendant to bring a firearm to the sale.

The district judge reviewed the evidence presented at the sentencing hearing and the parties' objections to the PSI. He determined that Defendant should receive an enhancement under USSG § 2D1.1 for possession of firearm based on evidence showing that Defendant had the .40 caliber handgun in his jacket pocket at the time of his arrest. He sustained in part the government's objection to the PSI concerning the lack of an enhancement for Defendant's role in the offense, but found that a three level enhancement under USSG § 3B1.1 (rather than four) was appropriate. Although the evidence did not show that Defendant supervised five or more people, the district judge found that Defendant had a leadership role in an extensive drug trafficking organization, the organization used a sophisticated delivery method and transported a large amount of heroin, and Defendant supervised at least one other person. Based on these findings, Defendant's total offense level was 34 and his sentencing range was 151 to 188 months. The district judge denied Defendant's request for a variance based on alleged sentencing entrapment or sentencing factor manipulation. Finding that a sentence at the low end of the advisory guideline range would be reasonable, the district judge sentenced Defendant to 151 months imprisonment.

## II.  DISCUSSION

Defendant challenges the sentence imposed by the district court on three grounds.  First, Defendant claims that the district court erred when it denied his motion for variance requesting a non-guideline sentence due to sentencing factor manipulation, sentencing entrapment, and consideration of the § 3553(a) factors.  Second, Defendant asserts that the district court did not make specific findings supporting a three-level enhancement for his role in the offense and, considering the factual findings made by the district court, this enhancement was improper.  Third, Defendant claims that the district court erred by imposing a two-level enhancement for his possession of a firearm during the charged offense, because the conduct of undercover agents constituted sentencing entrapment or sentencing factor manipulation.

## A.  Defendant's Request for a Variance

Defendant asserts that the district court erred by refusing to grant his request for a variance based on alleged sentencing entrapment or manipulation by government agents.  At the sentencing hearing, Defendant requested a "variance" but relied on case law discussing the availability of a downward departure for sentencing entrapment or sentencing factor manipulation.  While Defendant may have relied on law applicable to sentencing departures, his request for sentencing relief was phrased as a request for a variance.  Appellant's App. at 220 ("And I would ask that the Court . . . consider that factor of sentencing factor

-6-

manipulation in granting a variance in this case"). The district court treated Defendant's argument as a request for a variance and did not address the possibility of a downward departure for sentencing factor manipulation. *Id*. at 245. Therefore, we will treat Defendant's argument concerning sentencing entrapment or manipulation as a request for a variance under the factors set forth in 18 U.S.C. § 3553(a), and consider how the law applicable to departures on the ground raised by Defendant informs the district court's decision to grant or deny a variance.

This court reviews a district court's decision to grant or deny a request for variance under a deferential abuse of discretion standard. *United States v. Haley*, 529 F.3d 1308, 1311 (10th Cir. 2008). "A district court abuses its discretion 'when it renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable.'" *Id*. (quoting *United States v. Munoz-Nava*, 524 F.3d 1137, 1146 (10th Cir. 2008)). When the district court's sentence falls within the properly calculated guideline range, this Court must apply a rebuttable presumption that the sentence is reasonable. *United States v. Sells*, 541 F.3d 1227, 1237 (10th Cir. 2008). "The presumption of reasonableness is, however, 'a deferential standard [the defendant] may rebut by demonstrating that the sentence is unreasonable when viewed against the other factors delineated in § 3553(a).'" *Id*. (quoting *United States v. Kristi*, 437 F.3d 1050, 1054 (10th Cir. 2006)).

Defendant sought a variance based on alleged sentencing factor

manipulation by government agents and application of the § 3553(a) factors. He claims that government agents pressured him into bringing a gun and additional quantities of heroin to drug sales specifically for the purpose of enhancing Defendant's sentence. Focusing on the agents' conduct, Defendant relies on conversations between undercover agents when they discussed whether to ask Defendant to sell them a gun. Defendant claims that he would not have brought a gun to a drug sale but for the conduct of government agents, and the district court should have reduced his sentence based on outrageous governmental conduct. He also argues that the district court failed to take into account the § 3553(a) factors, such as Defendant's youth and lack of guidance, in determining an appropriate sentence for him. He claims that he moved to the United States after his father was murdered in Mexico and, due to his youth and inexperience, he became involved in a drug trafficking organization. Defendant asserts that the district court abused its discretion by refusing to grant a variance under these circumstances.

Defendant argues a district court has discretion to consider sentencing factor manipulation or entrapment as a basis for variance under 18 U.S.C. § 3553(a), and the prior, more rigid standard for a downward departure is not applicable to a variance request. Before *Booker*, this Court analyzed claims of sentencing entrapment or manipulation under the rubric of "outrageous governmental conduct." *United States v. Lacey*, 86 F.3d 956, 963 (10th Cir.

1996). This is a due process principle allowing a court to modify a sentence if, considering the totality of the circumstances, "the government's conduct is so shocking, outrageous and intolerable that it offends 'the universal sense of justice.'" *Id.* at 964. While *Lacey* stopped short of recognizing sentencing factor manipulation as a separate defense, it held that outrageous governmental conduct may warrant a downward departure in an extreme case.[1] *Id.* at 963. When *Lacey* was decided, the sentencing guidelines were mandatory and outrageous governmental conduct was a basis for a downward departure.

While *Booker* made application of the sentencing guidelines advisory rather

---

[1] Other federal circuit courts of appeal have adopted varying approaches to claims of sentencing manipulation as an objection to a sentence. The Sixth and D.C. Circuits categorically reject the doctrine of sentencing factor manipulation and do not consider such claims, while the Second, Third, Fourth, Fifth and Seventh Circuits have not expressly accepted or rejected a defense of sentencing factor manipulation. *United States v. Guest*, ___ F.3d ___, 2009 WL 1175172 (6th Cir. May 4, 2009); *United States v. Tykarsky*, 446 F.3d 458 (3d Cir. 2006); *United States v. Snow*, 309 F.3d 294 (5th Cir. 2002); *United States v. Gomez*, 103 F.3d 249 (2d Cir. 1997); *United States v. Walls*, 70 F.3d 1323 (D.C. Cir. 1995); *United States v. Okey*, 47 F.3d 238 (7th Cir. 1995); *United States v. Jones*, 18 F.3d 1145 (4th Cir. 1994). The Ninth Circuit permits district courts to depart downward if a defendant can establish "imperfect entrapment," which is not a complete defense to a criminal charge but may provide a basis for a downward departure at sentencing. *United States v. Mejia*, 559 F.3d 1113 (9th Cir. 2009). The First and Eighth Circuits recognize the doctrine of sentencing manipulation as a basis for a downward departure in extraordinary cases when the government improperly engages in conduct to expand the scope of a crime. *United States v. Fontes*, 415 F.3d 174 (1st Cir. 2005); *United States v. Shephard*, 4 F.3d 647 (8th Cir. 1993). The Eleventh Circuit has adopted an approach similar to *Lacey* and considers whether the certain sentencing factors should be filtered out or rejected due to the government's outrageous conduct. *United States v. Ciszkowski*, 492 F.3d 1264, 1270 (11th Cir. 2007).

mandatory, it did not impact pre-existing law concerning the interpretation of any sentencing guideline or expand the availability of departures under the sentencing guidelines. 543 U.S. at 264-65. Instead, *Booker* allows district courts to exercise discretion to vary from the guideline range if a variance would be appropriate under the § 3553(a) factors. The Eighth Circuit has recently addressed the difference between a departure for sentencing factor manipulation and a variance under the § 3553(a) factors. In drug cases, the Eighth Circuit authorizes district courts to depart downward if the government extends a criminal investigation for the sole purpose of increasing the drug quantities for which a defendant is responsible. *United States v. Torres*, 563 F.3d 731 (8th Cir. 2009). *Booker* did not change prior Eighth Circuit law relating to departures for sentencing factor manipulation. *See id.* at 734-35. However, after *Booker*, a claim of sentencing factor manipulation may also be raised as a request for a variance based on § 3553(a)'s requirement that a district court consider the "nature and circumstances of the offense." *Id.* Although *Booker* provided another avenue for the defendant in *Torres* to raise a claim of sentencing factor manipulation, *Booker* did not alter the substantive law concerning the availability of a departure for such manipulation.

We agree with the Eighth Circuit's holding in *Torres* and find that *Booker* did not alter the standard for a defendant to succeed on a claim of outrageous governmental conduct, but a defendant's claim of sentencing factor manipulation

may also be considered as request for a variance from the applicable guideline range under the § 3553(a) factors. *Lacey* is still good law to the extent that it governs a request for a downward departure for outrageous governmental conduct. In this case, Defendant requested a variance rather than a departure, and there is no indication from the record that the district court applied the stricter standard for a departure to Defendant's request. Based on the evidence presented to the district court at the sentencing hearing, we find that the district court did not abuse its discretion by denying Defendant's request for a variance, because Defendant has not shown that his sentence was enhanced as a result of the government's conduct. At the sentencing hearing, Officer Mendez testified that he arranged the October 23, 2007 controlled buy and did not ask Defendant to bring a gun, but a .40 caliber handgun was found in Defendant's jacket pocket following his arrest. Officer Garcia testified that another officer reported that Defendant was carrying a concealed firearm at a controlled buy on August 31, 2007, and Defendant did not disclose this fact or attempt to sell the gun to undercover officers. The district court found this evidence to be credible and rejected Defendant's argument that government agents asked him to bring a firearm to a controlled buy for the specific purpose of enhancing his sentence.[2]

---

[2] Special Agent Kraus testified that there was no conversation concerning the sale of a gun on October 23, 2007, and Defendant did not disclose the presence of the .40 caliber handgun or offer it for sale to undercover agents. Appellant's App. at 153. Police also found a .44 magnum handgun and a rifle at

Concerning Defendant's request for a variance based on his youth and lack of guidance, the district court considered the § 3553(a) factors and determined that a guideline sentence was appropriate. Although Defendant claims that he moved to the United States after his father was murdered and became caught up in a drug conspiracy due to his inexperience and youth, the government presented evidence contradicting Defendant's statements and the district court did not abuse its discretion in determining that application of the § 3553(a) factors did not support a downward variance in this case. Thus, the district court's decision to impose a sentence within the guideline range was reasonable.

## B. Challenges to District Court's Application of the Sentencing Guidelines

Defendant also challenges the district court's imposition of a two level enhancement under USSG § 2D1.1 for possession of a firearm and a three level enhancement under USSG § 3B1.1 for Defendant's role in the offense. When reviewing the district court's application of the sentencing guidelines, this Court

---

Defendant's home while executing a search warrant following his arrest. Although an undercover agent, identified as Agent Aguirre, did ask Defendant on more than one occasion if he could supply him a gun, it does not appear that Defendant ever sold undercover agents a gun and he was not charged with an offense under 18 U.S.C. § 924(c). The district court considered evidence suggesting that Agent Aguirre asked Defendant to bring a firearm to a controlled buy for the purpose of enhancing his sentence, and found that this evidence would have carried more weight if Defendant had been charged with a violation of § 924(c). *Id*. at 241. Thus, the district court's determination that Defendant possessed a firearm of his own free will, rather than due to coercive conduct of government agents, was reasonable.

reviews the district court's findings of fact for clear error and legal conclusions *de novo*. *United States v. Mozee*, 405 F.3d 1082, 1088 (10th Cir. 2005). We will not "disturb a factual finding unless it has no basis in the record . . . [and] in reviewing the court's decision to apply an enhancement, we view the evidence and inferences therefrom in the light most favorable to the district court's determination." *Id.*

Section 3B1.1 of the sentencing guidelines permits a district court to assess up to a four level enhancement based on a defendant's role in the offense. The sentencing guidelines provide that a defendant's total offense level should be increased by three levels if he or she "was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive . . . ." USSG § 3B1.1(b). An enhancement under this section requires the involvement of at least one "participant" other than the defendant, and a "participant" is defined as a "person who is criminally responsible for the commission of the offense." *United States v. Gallant*, 537 F.3d 1202, 1241 (10th Cir. 2008). The defendant must also exercise some degree of "decision-making authority or control over a subordinate." *United States v. Pena-Hermosillo*, 522 F.3d 1108, 1112 (10th Cir. 2008); *see also United States v. Gonzalez Edeza*, 359 F.3d 1246, 1248 (10th Cir. 2004) ("At bottom, '[a] supervisor is one who exercised some degree of control over others involved in the commission of the offense or . . . [who was] responsible for organizing others

for the purpose of carrying out the crime.'") (quoting *United States v. Allemand*, 34 F. 3d 923, 931 (10th Cir. 1994)).

According to Defendant, the district court did not make specific findings supporting its conclusion that he was a manager or supervisor of the conspiracy. Defendant acknowledges that the district court made factual findings, but he characterizes these findings as "general." We disagree. The district court considered the evidence presented at the sentencing hearing and made factual findings explaining its decision to increase Defendant's total offense level by three levels under USSG § 3B1.1. The district court determined that the criminal organization to which Defendant belonged imported a substantial amount of heroin using a sophisticated delivery method, and described the organization as a "significant operation." It found that Defendant managed or supervised at least one other person, and he had the contacts and ability to arrange for the importation of heroin from Mexico. These factual findings are supported by the record and provide a sufficient basis to enhance Defendant's sentence for his role in the offense. Therefore, the district court did not err by imposing a three level enhancement under USSG § 3B1.1(b) for Defendant's role in the offense.

Finally, Defendant claims that the district court erred by enhancing his sentence by two levels for possessing a firearm. Section 2D1.1(b)(1) of the sentencing guidelines provides for a two level enhancement "[i]f a dangerous weapon (including a firearm) was possessed" in connection with a drug

trafficking offense. The government bears the initial burden to prove that a defendant possessed a firearm. *United States v. Smith*, 131 F.3d 1392, 1400 (10th Cir. 1997). To satisfy its burden for application of a two level enhancement under USSG § 2D1.1(b)(1), the government must show a temporal proximity between a weapon, the drug trafficking activity, and a defendant. *United States v. Zavala-Rodriguez*, 379 F.3d 1182, 1185 (10th Cir. 2004). If the government meets its burden, this enhancement should be applied unless a defendant can show that it is "clearly improbable" that the weapon was possessed in connection with a drug offense. *United States v. Heckard*, 238 F.3d 1222, 1233 (10th Cir. 2001).

Construing the evidence in a light most favorable to the district court's guideline application, the Court finds that the district court's decision to enhance Defendant's sentence for possessing a firearm in connection with a drug trafficking offense was reasonable. When Defendant was arrested following a controlled buy on October 23, 2007, government agents recovered a .40 caliber Smith & Wesson handgun from Defendant's jacket pocket. Contrary to Defendant's claims of sentencing manipulation or entrapment, there is no evidence in the record suggesting that Defendant brought the gun to the controlled buy at the request of government agents. The firearm was concealed during the controlled buy on October 23, 2007, and Defendant did not attempt to sell it or disclose its presence to anyone. This creates a clear temporal proximity between the firearm, the defendant, and the drug trafficking activity, and it is not clearly

-15-

improbable that Defendant possessed the firearm in connection with a drug trafficking offense.

## III.    CONCLUSION

The sentence imposed by the district court is AFFIRMED in all respects.