**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 22, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

TONY WASHINGTON,

Defendant–Appellant.

No. 09-3216
(D.C. No. 2:07-CR-20090-KHV-2)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **LUCERO**, and **MURPHY**, Circuit Judges.

---

Tony Washington was convicted by a jury of one count of conspiracy to

distribute or possess with intent to distribute fifty grams or more of cocaine base

("crack cocaine") and marijuana, in violation of 21 U.S.C. § 841(a)(1) and

(b)(1)(A)(iii), all in violation of 21 U.S.C. § 846 ("Count One"); and one count of

conspiracy to maintain a residence for the purpose of distributing and using

---

[*]      After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel.  It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

cocaine base and marijuana, in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2, all in violation of 21 U.S.C. § 846 ("Count Four").[1]  He was sentenced to a term of imprisonment of 300 months on Count One and 240 months on Count Four, to run concurrently.  He appeals his convictions and sentences.  Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

**I**

Washington raises four issues on appeal.  He contends:  (1) there was insufficient evidence to support his convictions; (2) the jury instructions omitted an element of the offenses—the alleged conspirators' interdependence; (3) neither the drug quantity that determined his base offense level nor two enhancements the district court applied were proven by a preponderance of the evidence; and (4) his sentence was substantively unreasonable and unconstitutional because the crack/powder cocaine sentencing disparity disproportionately impacts African-Americans including Washington.

**A**

Washington argues that the evidence presented at trial was insufficient because there was no evidence that he and anyone else acted interdependently, which is one element of a conspiracy charge under 21 U.S.C. § 846.  See United

---

[1]     Although Count One and Count Four charged Washington and his six co-defendants with conspiracy to distribute cocaine base <u>and</u> marijuana, the jury instructions and the verdict form referred to cocaine base <u>or</u> marijuana.  Further, throughout his briefs, Washington's arguments concern only cocaine base.  We therefore do not consider the marijuana aspects of either count.

States v. Wright, 506 F.3d 1293, 1298 & n.3. (10th Cir. 2007). We review challenges to the sufficiency of the evidence de novo, viewing the evidence and drawing all reasonable inferences in favor of the jury's verdict. Id. at 1297. A conviction may be reversed only if "no reasonable juror could have reached the disputed verdict." United States v. Carter, 130 F.3d 1432, 1439 (10th Cir. 1997).

Washington argues that, although there was evidence that he and his co-conspirators had buyer-seller relationships, shared suppliers, and were competitors, there was no evidence that they acted together for their mutual benefit. Instead, he argues, each of the conspirators acted for his or her own benefit. We disagree. The evidence at trial indicated that twice a week over the course of several months in 2007, Washington pooled his money with that of one of his indicted co-conspirators, Elton Simmons, and another individual, Travis Williams, in order to purchase several ounces of powder cocaine.[2] The evidence further showed that Washington and Simmons would then convert the powder cocaine into crack cocaine at Washington's apartment on Appleton Street in Parsons, Kansas, and sell the crack cocaine to others, including two of their indicted co-conspirators, Carol Boyce and Carlton Coleman. Boyce testified that she assisted Washington in the distribution of crack cocaine, either by bringing him new customers or selling to other people, and that Washington sometimes

---

[2]    At sentencing, the district court found that a total of 680.4 grams of cocaine was acquired in this manner (1.5 ounces twice per week for eight weeks).

gave her crack cocaine as compensation for her sales efforts. Boyce also testified that on three occasions she obtained approximately fourteen grams of crack cocaine for Washington to distribute, and in return he provided her with crack cocaine. Coleman also testified that he sold crack for Washington, although the quantity is unclear.

Washington points to some contrary evidence, but viewed in the light most favorable to the verdict, there was sufficient evidence Washington intended to act together with others "for their shared mutual benefit within the scope of the conspiracy charged," which is the hallmark of the interdependence element of a conspiracy charge. United States v. Caldwell, 589 F.3d 1323, 1329 (10th Cir. 2009) (quotation omitted). This is not a case merely involving a shared supplier, which we have said is insufficient to establish interdependence. See id. at 1330. There is more, including selling to others in a cooperative manner, see id., and acting with others in a mutually beneficial manner for the distribution of crack cocaine.

With respect to Count Four, Washington summarily stated in his opening brief that the evidence was insufficient, but he did not develop any argument or explain why the evidence was insufficient. And despite the government's delineation of such evidence in its response brief, Washington replied merely that it was improper to use acts that established Count Four to support a conviction on

Count One.[3] Thus, we do not consider this issue. See Am. Airlines v. Christensen, 967 F.2d 410, 415 n.8 (10th Cir. 1992) ("It is insufficient merely to state in one's brief that one is appealing an adverse ruling below without advancing reasoned argument as to the grounds for the appeal."); see also Fed. R. App. P. 28(a)(4).

**B**

Washington's second argument is that the district court erred when it gave a jury instruction that omitted an element of the conspiracy offenses: the alleged conspirators' interdependence. Because he did not raise this issue at trial, we review for plain error, which is an error that is plain, affects substantial rights, and "seriously affects the fairness, integrity or public reputation of judicial proceedings." United States v. Duran, 133 F.3d 1324, 1330 (10th Cir. 1998) (quotation and alteration omitted).

Applying these standards, we conclude that there was no plain error in the district court's instructions. The omission of "interdependence" as a separately numbered element in a conspiracy instruction is not plainly erroneous provided

---

[3] To the extent the latter argument is a complaint that Counts One and Four of the indictment suffered from a multiplicity problem and prejudiced him in the eyes of the jury, Washington waived the issue by not raising it before trial. See United States v. Morehead, 959 F.2d 1489, 1506 & n.11 (10th Cir. 1992) (explaining that multiplicity occurs when multiple counts cover the same criminal behavior and that, absent pretrial objection to the indictment, review is limited to the validity of multiple sentences), aff'd en banc, United States v. Hill, 971 F.2d 1461 (10th Cir. 1992).

that "the instructions as a whole adequately apprized the jury of the need to find interdependence." United States v. Heckard, 238 F.3d 1222, 1232 (10th Cir. 2001). The elements instructions referenced an agreement between two or more persons to distribute crack cocaine and to maintain an apartment for that purpose, as charged in the indictment, thereby distinguishing the charged conspiratorial conduct from mere buyer or seller conduct. This point was driven home in Instruction Number 17: "The mere existence of a buyer-seller relationship does not establish a conspriacy to distribute or possess with intent to distribute." Notably, the jury acquitted Washington on two counts of simple distribution, which suggests the instructions adequately distinguished the conspiracy charges from the distribution charges.

Instruction Number 18 applied to both counts. In it, the district court instructed the jury that it had to find Washington understood "the unlawful character of the plan, and intentionally encourage[d], advise[d] or assist[ed] for the purpose of furthering the plan." The court further instructed:

> To be a member of the conspiracy, defendant need not know all of the other members or all of the details of the conspiracy, or the means by which its purposes were to be accomplished. Each member of the conspiracy may perform separate and distinct acts. For defendant to be a member of the conspiracy, however, the government must prove beyond a reasonable doubt that defendant was aware of the common purpose and was a willing participant with the intent to advance the purposes of the conspiracy. A person who has no knowledge of a conspiracy, but just happens to act in a way which furthers its objectives or purpose, does not thereby become a conspirator.

-6-

(Emphases added.)  The reference to an awareness of a "common purpose" and the requirement that a defendant be a "willing participant with the intent to advance the purposes of the conspiracy" is analogous to the terminology we approved in Heckard, 238 F.3d at 1232 ("join together"; "partners in crime") and United States v. Russell, 109 F.3d 1503, 1513 (10th Cir. 1997) ("a mutual understanding to try to accomplish a common and unlawful plan") as adequate substitutes for the term "interdependent."

## C

Washington challenges the district court's application of the United States Sentencing Guidelines in determining his sentencing range.  He contends that the base offense level and two enhancements were not proven by a preponderance of the evidence.  In reviewing the court's application of the Guidelines, we examine "the district court's findings of fact for clear error and legal conclusions de novo."  United States v. Beltran, 571 F.3d 1013, 1020 (10th Cir. 2009).  "We will not disturb a factual finding unless it has no basis in the record[,] and in reviewing the court's decision to apply an enhancement, we view the evidence and inferences therefrom in the light most favorable to the district court's determination."  Id. (quotation and alterations omitted).

## 1

"The trial court may rely upon an estimate [of drug quantity] to establish the defendant's guideline offense level so long as the information relied upon has

some basis of support in the facts of the particular case and bears sufficient indicia of reliability." United States v. Dalton, 409 F.3d 1247, 1251 (10th Cir. 2005) (quotations omitted). Our review of the district court's calculation of drug quantity for Guidelines purposes is for clear error. United States v. Todd, 515 F.3d 1128, 1135 (10th Cir. 2008).

The district court estimated that 889.67 grams of cocaine base was attributable to Washington, as follows: 42.52 grams obtained for him by Boyce; 81.7 grams seized in a traffic stop of one of his distributors; 85.05 grams based on $2,600 confiscated from him when he arrived at the home of another conspirator while law enforcement officers were executing a warrant there; and 680.4 grams that represented 1.5 ounces, twice a week, for eight weeks that Washington, Simmons, and Williams purchased with their pooled money. Because the total was greater than 500 grams but less than 1.5 kilograms, the court determined the base offense level to be 34 under U.S.S.G. § 2D1.1(c)(3).[4] Although Washington challenges both the conversion of the $2,600 into 85.05 grams and the estimation that he, Simmons, and Williams purchased 680.4 grams, he recognizes that only the challenge to the 680.4 grams can lower the drug quantity below 500 grams and thereby reduce his base offense level under U.S.S.G. § 2D1.1(c)(4). We therefore confine our analysis to the 680.4 grams.

---

[4]     All citations to the Guidelines are to the November 1, 2008 edition that was used for sentencing in this case.

-8-

Washington contends that he, Simmons, and Williams purchased 1.5 ounces of cocaine over an eight-week period once every two weeks rather than twice every week, as the district court found. The district court based that determination on Simmons' testimony. Washington points to two exchanges at trial and argues that the court should have found that the frequency was once every two weeks. In the first exchange, the prosecutor asked Simmons, "How often would you or [Williams] go to Coffeyville to get cocaine?" Simmons responded, "He would go maybe twice a week." Shortly thereafter, the prosecutor asked, "[W]as it about every two weeks you would get this cocaine from Coffeyville?" Simmons replied "Yes." Simmons also replied in the affirmative when asked "Travis would make trips to Coffeyville about twice a week?"

Based on the inconsistency between "twice a week" and "every two weeks," Washington seeks a lesser estimate. But the inference the district court drew from the evidence is certainly not "without factual support." See Todd, 515 F.3d at 1135. The district court, thus, did not commit clear error with respect the amount of cocaine base attributed to Washington.

**2**

Washington asserts that the evidence was insufficient to support the three-level enhancement the district court applied for his role in the offense under U.S.S.G. § 3B1.1(b). That provision states: "If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five

or more participants or was otherwise extensive, increase by 3 levels."  U.S.S.G. § 3B1.1(b).  Washington contends that there was no evidence he exercised control or decision-making authority over another participant.

In applying the enhancement, the district court relied on testimony that Coleman, Boyce, and a person named "Misty" conducted drug transactions for Washington, and evidence that another person, Sandy Kelly, watched the surveillance monitors at Washington's apartment.  Having reviewed the trial transcript and Washington's arguments, we conclude the district court did not clearly err in its finding that the enhancement applies.[5]

**3**

The district court also imposed a two-level enhancement for the possession of a firearm under U.S.S.G. § 2D1.1(b)(1), finding that "clearly there were guns in proximity to the drugs and the residence where the drugs and drug proceeds were stored as well as drug paraphernalia."  In order for this enhancement to apply, "the government must show a temporal proximity between a weapon, the

---

[5]    In his reply brief, Washington reiterates his multiplicity argument, see supra note 3, contending that to the extent evidence necessary to convict on Count Four was used at sentencing to support the enhancement for his role in the offense, he was subject to double jeopardy.  Despite his failure to raise a pretrial objection to the indictment on multiplicity grounds, we may review this argument because it pertains to his sentence, not his conviction.  See Morehead, 959 F.2d at 1506 & n.11.  Nonetheless, there is a clear distinction between his conspiracy to maintain the Appleton Street apartment as a crack house and his exercise of authority over Boyce, Coleman, and "Misty" with regard to distribution of cocaine, and over Kelly with regard to the manner in which the crack house functioned.  Accordingly, we see no multiplicity problem.

drug trafficking activity, and a defendant." Beltran, 571 F.3d at 1021. "If the government meets its burden, this enhancement should be applied unless a defendant can show that it is clearly improbable that the weapon was possessed in connection with a drug offense." Id. (quotation omitted).

The district court properly applied the enhancement. The record contains substantial evidence of temporal proximity between firearms, drug trafficking activity, and Washington, and he has not shown that it was clearly improbable that the weapons were possessed in connection with a drug offense.

**D**

Washington's final contention concerns the district judge's refusal to grant his request for a downward variance based on the disparate impact the crack/powder sentencing disparity has on African-Americans. The court stated:

> I'm not going to grant a variance based on the argument about the crack and powder cocaine discrepancy. I think if and when the drug guidelines are . . . revised and made retroactive, you know that drill, we know how to adjust them and we've been through that in the past. I'm going to go by the guidelines which are applicable to this offense conduct.

To the extent Washington has framed his challenge to the court's refusal to grant a downward variance as a violation of his equal protection rights or substantive due process, we have previously rejected such arguments, see, e.g., United States v. Williamson, 53 F.3d 1500, 1530 (10th Cir. 1995) (equal protection); United States v. Turner, 928 F.2d 956, 960 (10th Cir. 1991)

(substantive due process), and we may not overrule those decisions "absent en banc consideration or a superseding contrary decision by the Supreme Court," Mendiola v. Holder, 585 F.3d 1303, 1310 (10th Cir. 2009) (quotation omitted). We therefore review only whether the district court abused its discretion in denying the variance. See Beltran, 571 F.3d at 1018.

Where a district court acknowledges its discretion to depart from the Guidelines' calculation of a base offense level resting on the quantity of crack cocaine but concludes that a departure is unwarranted under the defendant's circumstances, nothing mandates that the court "reduce a defendant's sentence in order to eliminate the crack/powder sentencing disparities." United States v. Caldwell, 585 F.3d 1347, 1355 (10th Cir. 2009), cert. denied, No. 09-11496, 2010 WL 2516004, (U.S. Oct. 4, 2010). Here, the district court was aware of its discretion to depart from the Guidelines but emphasized that it was going to apply the Guidelines "applicable to this offense conduct." In doing so, it is apparent the court concluded that a departure was unwarranted under Washington's circumstances. Accordingly, the court did not abuse its discretion in denying the variance.[6]

---

[6]  We note that the Fair Sentencing Act of 2010 was enacted on August 3, 2010, to "restore fairness to Federal cocaine sentencing." Pub. L. No. 111-220, 124 Stat. 2372, 2372 (the "Act"). But in relevant part, the Act only increased the minimum quantity of cocaine base, from 50 grams to 280 grams, necessary to trigger a ten-year minimum sentence. See id., § 2, 124 Stat. at 2372. This in effect reduced the statutory crack/powder cocaine disparity from 100:1 to

(continued...)

## II

The judgment is **AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge

---

[6](...continued)
approximately 18:1, as five kilograms or more of powder cocaine is necessary to trigger the same minimum sentence under 21 U.S.C. § 841(b)(1)(A)(ii). Because Washington's sentence was based on more than 280 grams of cocaine base, the Act alone does not affect his mandatory minimum sentence or his Guidelines sentence, even if the Act is considered retroactive or applicable to cases on direct review, a determination we need not and do not make. However, the Act provides emergency authority for the United States Sentencing Commission (the "Commission") to "promulgate the guidelines, policy statements, or amendments provided for in this Act as soon as practicable and in any event not later than 90 days after the date of enactment of this Act" and to "make such conforming amendment to the Federal sentencing guidelines as the Commission determines necessary to achieve consistency with other guideline provisions and applicable law." Pub. L. No. 111-220, § 8, 124 Stat. at 2374. Thus, if the Commission lowers the sentencing range on which Washington's sentence is based, he may be entitled to seek modification of his term of imprisonment under 18 U.S.C. § 3582(c)(2).