**F I L E D**

PUBLISH

**August 29, 2006**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

STEPHEN HERBERT BRANSON,

        Defendant - Appellant.

No. 06-3038

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS** [*]
**(D.C. NO. 04-CR-20151-KHV)**

---

Submitted on the briefs:

Jessica J. Travis, Olathe, Kansas, for Defendant - Appellant.

Eric F. Melgren, United States Attorney, Kim I. Martin, Assistant United States Attorney, Kansas City, Kansas, for Plaintiff - Appellee.

---

Before **TACHA**, **HARTZ**, and **TYMKOVICH**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

[*]After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument.

Stephen Herbert Branson pleaded guilty in the United States District Court for the District of Kansas to one count of possession of child pornography, *see* 18 U.S.C. § 2252(a)(4)(B), and was sentenced to 51 months' imprisonment. On appeal he argues that his sentence is unreasonable. We have jurisdiction under 28 U.S.C. § 1291 and affirm. In particular, we hold that a disparity between the federal-court sentence and the sentence that would be imposed for a like offense in state court does not make the sentence unreasonable.

## I.    BACKGROUND

Mr. Branson was indicted on November 17, 2004, for possession of child pornography. He pleaded guilty without entering into a plea agreement. His presentence report (PSR) calculated a total offense level of 24 and a criminal-history category of I. The resulting sentencing range under the United States Sentencing Guidelines was 51 to 63 months' imprisonment. Neither the government nor Mr. Branson objected to the PSR.

On July 21, 2005, Mr. Branson submitted a sentencing memorandum to the court requesting a downward variance from the Guidelines sentencing range. The memorandum argued that Mr. Branson was not a risk to public safety and that he had accepted responsibility for his crime. The district court held sentencing hearings on July 25, 2005; August 22, 2005; and January 24, 2006. At the July 25 hearing the court heard testimony from Dr. Bascom Ratliff, who had performed a

sexual-offender evaluation on Mr. Branson; from Mr. Branson; and from his wife, Megan Branson. After the hearing the court enumerated the factors favoring leniency, including Mr. Branson's "exceptional remorse, his history of mental illness, [and] his lack of any prior sexually aggressive conduct or sexually deviant conduct." R. Vol. II at 72. But it expressed a desire for more information, recognizing "that there are limitations in [Dr. Ratliff's] testimony" because of his failure to verify Mr. Branson's description of his condition, and stating that it "would like to know . . . what kinds of specific treatment programs exist within the Bureau of Prisons" and how such programs compared to programs available outside prison. *Id.* The court continued the hearing to allow the attorneys to gather additional information.

At the August 22 hearing the district court heard testimony from Dr. Andres Hernandez, director of the sex-offender treatment program at the Federal Correctional Institution in Buckner, North Carolina; Dr. John Wisner, a psychiatrist at the University of Kansas School of Medicine; Brenda Jamison, Mr. Branson's ex-wife; and Ruby Branson and Augusta Branson Bonecutter, Mr. Branson's two daughters. At the end of the hearing the court stated that Mr. Branson "has certain behaviors and offense characteristics which are inconsistent with [his] self-report[] to [Dr. Ratliff]," and ordered Mr. Branson "to participate in a sexual offender treatment screening program . . . under the

auspices of the court, . . . independent of either side's expert witnesses, and [which] would include, but not be limited to, polygraph examinations." R. Vol. III Doc. 46 at 131-32. The court again continued the sentencing proceedings.

The district court held the final hearing on January 24, 2006, after receipt of the independent-examination report ordered on August 22. The court heard arguments from the parties and then stated:

> [I]t seems to me that a sentence at the low end of the guidelines, 51 months, would be the best way to give you . . . treatment in a highly structured environment, which the Court finds that you do need. This would be the best way to deter other people from committing these kind of offenses, and to punish you for the wrong which you've done. . . . I've given a lot of thought to this and . . . I think that this sentence is no greater than is necessary to provide adequate deterrence and also to protect the public.

R. Vol. IV Doc. 47 at 154-55.

## II.    DISCUSSION

Mr. Branson's only contentions on appeal relate to the reasonableness of his sentence. After *United States v. Booker*, 543 U.S. 220 (2005), we review sentences for reasonableness. *See United States v. Kristl*, 437 F.3d 1050, 1053 (10th Cir. 2006). "[A] sentence that is properly calculated under the Guidelines is entitled to a rebuttable presumption of reasonableness. This is a deferential standard that . . . the defendant . . . may rebut by demonstrating that the sentence is unreasonable when viewed against the other factors delineated in [18 U.S.C.]

-4-

§ 3553(a)." *Id.* at 1054. We review the district court's "factual findings for clear error and legal determinations de novo." *Id.*

Mr. Branson argues that his sentence was unreasonable for the following reasons: (1) the sexual-offender evaluation performed by Dr. Ratliff showed that he is not a threat to public safety; (2) he accepted responsibility for his crime and cooperated fully with the investigation of his offense; (3) the expert testimony proffered by the government was not persuasive because the experts had not personally evaluated him; (4) the district court did not consider the sentencing factors set forth in 18 U.S.C. § 3553(a); and (5) he received a much higher sentence than he would have received had he been prosecuted by the state.

Mr. Branson has not rebutted the presumption of reasonableness. The first three of Mr. Branson's contentions are nothing more than a disagreement with the district court about how the evidence should be evaluated and weighed. There was no clear error in the court's assessment of the facts.

As for Mr. Branson's complaint that the district court did not discuss the § 3553(a) factors, we read the record differently. The court did address the factors as it explained its sentencing decision. In any event, the court is not required to express its consideration of those factors on the record. *See United States v. Rines*, 419 F.3d 1104, 1107 (10th Cir. 2005) ("It is true that the district court did not march through § 3553(a)'s sentencing factors, but we have never

imposed such a requirement."). This was not a perfunctory sentencing proceeding. The court's consideration of the arguments made by Mr. Branson was exceedingly thorough. *See United States v. Sanchez-Juarez*, 446 F.3d 1109, 1117 (10th Cir. 2006) ("[W]here a defendant has raised a nonfrivolous argument that the § 3553(a) factors warrant a below-Guidelines sentence and has expressly requested such a sentence, we must be able to discern from the record that the sentencing judge did not rest on the guidelines alone, but considered whether the guidelines sentence actually conforms, in the circumstances, to the statutory factors." (internal quotation marks, brackets, and ellipses omitted)).

Finally, Mr. Branson argues that he would have received a significantly lower sentence had he been prosecuted in state court. Sentencing courts must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). But this does not mean that a sentence calculated under the Guidelines is unreasonable simply because it is harsher than a state-court sentence would be for a comparable crime. Federal and state authorities have concurrent jurisdiction over various offenses and may apply disparate punishments to similar conduct. Adjusting federal sentences to conform to those imposed by the states where the offenses occurred would not serve the purposes of § 3553(a)(6), but, rather, would create disparities within the federal system, which is what

-6-

§ 3553(a)(6) is designed to discourage. As the Fourth Circuit said in reversing a sentence that apparently considered state/federal sentencing disparities, "*The sole concern of section 3553(a)(6) is with sentencing disparities among federal defendants*. . . . The Guidelines [seek] to avoid only the unwarranted disparities that exist[] in the federal criminal justice system, that system for which the Guidelines are governing law." *United States v. Clark*, 434 F.3d 684, 687 (4th Cir. 2006). Other circuits take a like view of the Guidelines. *See United States v. Snyder*, 136 F.3d 65, 70 (1st Cir. 1998) ("[F]ederal/state sentencing disparity is not a feature that can justify a departure."); *United States v. Haynes*, 985 F.2d 65, 70 (2d Cir. 1993) ("Allowing departure because a defendant might have been subjected to different penalties had he been prosecuted in state court would make federal sentences dependent on the law of the state in which the sentencing court was located, resulting in federal sentencing that would vary from state to state. To adopt this rationale for departure would surely undermine Congress' stated goal of uniformity in sentencing."); *United States v. Jeremiah*, 446 F.3d 805, 808 (8th Cir. 2006) ("Unwarranted sentencing disparities among federal defendants remains the only consideration under § 3553(a)(6)—both before and after *Booker*."); *United States v. Williams*, 282 F.3d 679, 681-82 (9th Cir. 2002) ("[T]he district court abused its discretion in departing [downward] on the ground that there was a disparity between federal and state penalties . . . . Allowing this

result to stand would undermine the goal of uniformity that Congress sought to ensure in enacting the Guidelines, because every federal sentence would become dependent upon the practice of the state within which the federal court sits." (internal quotation marks omitted)); *United States v. Searcy*, 132 F.3d 1421, 1422 (11th Cir. 1998) (per curiam) ("Allowing departure because the defendant could have been subjected to lower state penalties would undermine the goal of uniformity which Congress sought to ensure . . . ."); *cf. United States v. Dockery*, 965 F.2d 1112, 1114 (D.C. Cir. 1992) (the district court erred by "depart[ing] downward from both the federal statutory minimum sentence and the federal sentencing guidelines to impose a term of imprisonment corresponding to the one that the defendant would have received had he been convicted in Superior Court"). The sentence imposed on Mr. Branson is not unreasonable simply because it is more severe than a state-court sentence would have been.

## III. CONCLUSION

We AFFIRM the judgment of the district court.