**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 11, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

PATRICK CALVIN BEGAY,

    Defendant - Appellant.

No. 19-2022
(D.C. No. 1:17-CR-01714-JCH-1)
(D. N.M.)

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:17-CR-01714-JCH-1)**
_____

Submitted on the briefs:[*]

Brian A. Pori, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant-Appellant.

John C. Anderson, United States Attorney, Albuquerque, New Mexico, for Plaintiff-Appellee.
_____

Before **LUCERO**, **MURPHY**, and **EID**, Circuit Judges.
_____

**LUCERO**, Circuit Judge.
_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument.

This case involves disparities in the sentences received by Native Americans in federal court for aggravated assault as compared to state-court sentences for similar conduct. Although we are sympathetic to Begay's argument that but for an "an accident of history and geography," he would have received a lighter sentence, we conclude that our precedents foreclose the consideration of federal/state sentencing disparities under 18 U.S.C. § 3553(a)(6). Accordingly, exercising jurisdiction under 28 U.S.C. § 1291, we affirm the judgment of the district court.

**I**

Begay assaulted a man in the Navajo Nation with a baseball bat and a knife. The crime thus occurred in Indian country, within the boundaries of the reservation. Both Begay and the victim are enrolled members of the Navajo Nation. Begay was indicted in federal court on two counts of assault with a dangerous weapon and one count of assault resulting in serious bodily injury. He pled guilty to these charges.

The Probation Office issued a Presentence Report ("PSR") calculating Begay's guidelines imprisonment range to be 46 to 57 months. By analogy to Kimbrough v. United States, 552 U.S. 85 (2007), Begay requested that the court vary from this range because significantly higher penalties are imposed on Native Americans convicted of assault in New Mexico federal court than in New Mexico state court. Defense counsel requested to submit testimony regarding this asserted sentencing disparity. The government objected, arguing that under our precedents, if the district court "even considers this argument or this train of argument in any way whatsoever, any sentence rendered by the [c]ourt becomes invalid." The sentencing judge agreed,

2

stating that she could not consider Begay's sentencing-disparity argument under our unpublished decision in United States v. Beaver, 749 F. App'x 742 (10th Cir. 2018) (unpublished), and moreover, she would not consider this argument because the evidence Begay offered to present lacked sufficient detail to make any comparison of his sentence to state-court sentences meaningful.

Begay was sentenced to 46 months' imprisonment. He appeals, challenging the reasonableness of his sentence.

## II

We review a district court's sentencing decision for reasonableness. "[R]easonableness review has two aspects: procedural and substantive." United States v. Cookson, 922 F.3d 1079, 1091 (10th Cir. 2019). "Review for procedural reasonableness focuses on whether the district court committed any error in calculating or explaining the sentence." United States v. Friedman, 554 F.3d 1301, 1307 (10th Cir. 2009). Substantive reasonableness addresses "whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." United States v. Verdin-Garcia, 516 F.3d 884, 895 (10th Cir. 2008) (quotation omitted). Section 3553(a) includes an "overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary,' to accomplish the goals of sentencing" set forth in § 3553(a)(2). Kimbrough, 552 U.S. at 101 (quoting § 3553(a)). The statute enumerates several factors that the sentencing court "shall consider." § 3553(a). Of particular relevance to this appeal is § 3553(a)(6), under which a sentencing court

3

considers "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

"We review sentences for reasonableness under a deferential abuse of discretion standard." United States v. Haley, 529 F.3d 1308, 1311 (10th Cir. 2008) (citation omitted). Under this standard, we will reverse a sentence if it is "arbitrary, capricious, whimsical, or manifestly unreasonable." United States v. Muñoz-Nava, 524 F.3d 1137, 1146 (10th Cir. 2008) (quotation omitted). "A district court by definition abuses its discretion when it makes an error of law." Koon v. United States, 518 U.S. 81, 100 (1996).

## A

Citing Kimbrough, Begay argues that sentencing courts are not prohibited from considering whether sentences imposed on Native Americans for aggravated assault are unfairly harsh because Native Americans are disproportionately subject to federal jurisdiction. In Kimbrough, the Supreme Court upheld a district court's decision to impose a below-guidelines sentence on a defendant who pled guilty to charges relating to the possession and distribution of crack cocaine. 552 U.S. at 91-93. The Court began by explaining that the 100-to-1 disparity in crack and powder offenses—treating each gram of crack cocaine as equivalent to 100 grams of powder cocaine—originated in the Anti-Drug Abuse Act of 1986 ("ADAA") and was based on several false assumptions about the relative harmfulness of the two drugs. Id. at 95-97. It further explained that the Sentencing Commission, in adopting the ADAA's "weight-driven scheme" to set base offense levels for drug-trafficking, acted outside

4

its "characteristic institutional role" to formulate sentencing standards based on "empirical data and national experience." Id. at 96, 109 (quotation omitted). The Court also noted that the Commission itself had determined that the disparity was "generally unwarranted" for several reasons, including that it disproportionately affected African Americans and thereby "foster[ed] disrespect for and lack of confidence in the criminal justice system." Id. at 97-98 (quotations and citations omitted). Consistent with these conclusions, the Commission attempted several times—in 1995, 1997, 2002, and 2007—to reduce the crack/powder disparity, with limited success. See id. at 99.

Against this background, the district court sentenced Kimbrough below the recommended guidelines range. The court reasoned that the crack/powder cocaine disparity in the Guidelines "drove the offense level to a point higher than is necessary to do justice in this case." Id. at 111 (alteration omitted). The Fourth Circuit reversed, holding that "a sentence outside the guidelines range is per se unreasonable when it is based on a disagreement with the sentencing disparity for crack and powder cocaine offenses." Id. at 93.

Reversing the Fourth Circuit, the Supreme Court began from the premise stated in United States v. Booker, 543 U.S. 220 (2005), that the Guidelines are no longer mandatory, and the district court is tasked with "impos[ing] a sentence sufficient, but not greater than necessary" to accomplish the goals of sentencing provided in § 3553(a). 522 U.S. at 101 (quotation omitted). The Court concluded that consistent with this directive, "the District Court properly homed in on the

5

particular circumstances of Kimbrough's case and accorded weight to the Sentencing Commission's consistent and emphatic position that the crack/powder disparity is at odds with § 3553(a)." Id. at 111. Accordingly, the Court held that the district court did not abuse its discretion in calculating Kimbrough's sentence, and the Fourth Circuit erred in concluding otherwise. Id.

Begay draws several comparisons between the crack/powder disparity addressed by the Court in Kimbrough and the disparity in aggravated-assault sentences imposed on Native Americans. Like the crack/powder disparity, the aggravated-assault disparity originates in a statute: the 1885 Major Crimes Act ("MCA"), 18 U.S.C. § 1153, which confers exclusive jurisdiction to the federal courts over certain offenses committed by "[a]ny Indian . . . within the Indian country." As Begay contends, and the government does not dispute, the MCA disproportionately affects Native Americans.

Also like the crack/powder disparity, the aggravated-assault disparity is not the result of empirical data or national experience. Begay avers that the Sentencing Commission failed to collect adequate demographic data when it decided to apply the Guidelines to the MCA. As a result, the Commission did not consider the potentially disproportionate impact the Guidelines would have on Native Americans convicted of crimes enumerated in the statute. Acknowledging this problem, the Commission formed two advisory groups, the Native American Advisory Group ("NAAG") and the Tribal Issues Advisory Group ("TIAG"), to improve the application of the Guidelines to Native Americans under the MCA. The advisory groups confirmed the

6

disparity between federal and state sentences imposed on Native Americans—particularly aggravated-assault sentences in New Mexico. See U.S. Sentencing Comm'n, Report of the Native American Advisory Group i (2003); U.S. Sentencing Comm'n, Report of the Tribal Issues Advisory Group 3, 19 (2016).

## B

Before the district court, Begay argued these similarities with Kimbrough warranted consideration in the calculation of his sentence. Relying on our unpublished decision in Beaver, 749 F. App'x 742, the district court concluded that it could not consider disparities in aggravated-assault sentences imposed in federal court versus New Mexico state court. Beaver, of course, is not precedential, but it nonetheless purports to rely on two opinions, United States v. Branson, 463 F.3d 1110 (10th Cir. 2006), and United States v. Wiseman, 749 F.3d 1196 (10th Cir. 2014), for its stated proposition. 749 F. App'x at 748. On appeal, Begay argues we should consider federal/state sentencing disparities that disproportionately affect Native Americans, drawing compelling parallels to the application of the crack/powder disparity on African Americans discussed in Kimbrough.

In Branson, we rejected the argument that a sentencing court must take account of federal/state sentencing disparities under § 3553(a)(6). 463 F.3d at 1112. That subsection provides that sentencing courts must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." § 3553(a)(6). We explained in Branson that

7

this directive "does not mean that a sentence calculated under the Guidelines is unreasonable simply because it is harsher than a state-court sentence would be for a comparable crime." 463 F.3d at 1112. Because state and federal courts exercise concurrent jurisdiction over several criminal offenses, differences in sentences imposed in state and federal courts are to be expected. See id. Thus, consistent with the rulings of our sibling circuits, we concluded that the purpose of § 3553(a)(6) is not to prevent disparities between state and federal sentences, but rather to prevent disparities in sentences among federal defendants. Id. at 1112-13 (collecting cases). Were the sentencing court to conform a federal sentence to a state sentence, it would undermine this goal. See id. at 1112. Accordingly, we held that "[t]he sentence imposed on Mr. Branson is not unreasonable simply because it is more severe than a state-court sentence would have been." Id. at 1113 (emphasis added).

Eight years later in Wiseman, we again rejected the argument that the district court procedurally erred by failing to consider, under § 3553(a)(6), whether the defendant would have received a different sentence in state court for similar conduct. 749 F.3d at 1194, 1196. Citing Branson, we affirmed "that § 3553(a)(6) is only intended to apply to sentencing disparity among and between similarly situated federal defendants." Id. at 1196 (citation omitted). We further concluded that under Kimbrough, a "judge's policy judgment that drug sentences in federal court are too long when compared to state court sentences" cannot be used as the basis for a downward variance under § 3553(a)(6). Id.

We are sympathetic to Begay's concern that Native Americans receive harsher sentences for aggravated assault than other groups for no reason other than Native Americans are disproportionately subject to federal criminal jurisdiction. Nevertheless, we acknowledge "[w]e cannot overrule the judgment of another panel of this court. We are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court." In re Smith, 10 F.3d 723, 724 (10th Cir. 1993) (per curiam). Branson and Wiseman control, and they preclude consideration of Begay's sentencing-disparity arguments.

These precedents deal only with § 3553(a)(6). Begay's sentencing-disparity arguments may be relevant to other § 3553(a) factors. See Kimbrough, 552 U.S. at 110-11.[1] We agree with the government, however, that Begay has failed to sufficiently develop his arguments with respect to any § 3553(a) factor other than § 3553(a)(6). In his opening brief on appeal, Begay cites the provision in § 3553(a)(2)(A) that requires a district court to consider "the need for the sentence imposed . . . to promote respect for the law." But other than a citation to a dissenting

_____

[1] We note that in Kimbrough, the Court specifically upheld the district court's application of the § 3553(a) factors to the crack/powder sentencing disparity, including its allusion to the Sentencing Commission's reports on the 100-to-1 disparity under § 3553(a)(5), which requires consideration of policy statements issued by the Sentencing Commission. Id. at 110. The Court also approved the sentencing court's "fram[ing of] its final determination in line with § 3553(a)'s overarching instruction to impose a sentence sufficient, but not greater than necessary, to accomplish the sentencing goals advanced in § 3553(a)(2)." Id. at 111 (quotation omitted); see also Wiseman, 749 F.3d at 1196 (noting possibility that sentencing disparity could warrant downward variance under § 3553(a) factors other than § 3553(a)(6)).

opinion from one of our sibling circuits and a citation to <u>Kimbrough</u>, he does not

further develop the argument that a district court may consider a federal/state

sentencing disparity under § 3553(a)(2)(A). Accordingly, we consider Begay's

sentencing-disparity arguments under only § 3553(a)(6).

So limited, Begay's arguments are foreclosed by <u>Branson</u> and <u>Wiseman</u>. Both

cases squarely hold that a district court may not consider a federal/state sentencing

disparity under § 3553(a)(6), reasoning that consideration of such a disparity would

undermine the statute's goal of achieving uniformity in sentences among similarly

situated federal defendants. <u>Branson</u>, 463 F.3d at 1112-13; <u>Wiseman</u>, 749 F.3d at

1196. <u>Wiseman</u>, moreover, holds that "the <u>Kimbrough</u> line of cases do not . . .

conflict with <u>Branson</u>" and do not contradict our interpretation of § 3553(a)(6). 749

F.3d at 1195. Instead, <u>Kimbrough</u> recognizes "that the guidelines are advisory and

that district courts have the authority to deviate from guideline sentences based on

policy considerations, including disagreements with the guidelines." <u>Id.</u> Begay

attempts to distinguish <u>Branson</u> and <u>Wiseman</u> on the basis that they did not involve a

Native American defendant. But the disproportionate effect of a sentencing disparity

on Native Americans, though perhaps relevant to other § 3553(a) factors, does not

permit us to review federal/state disparities under § 3553(a)(6).[2]

---

[2] Begay also argues that his sentence is substantively unreasonable because the district court "failed to recognize [that] federal/state sentencing disparities warranted a place in its sentencing deliberation." His argument for substantive unreasonableness is substantially identical to his arguments for procedural unreasonableness. Because he contends the district court failed to consider his sentencing-disparity arguments under the § 3553(a) sentencing factors, Begay's

10

## III

**AFFIRMED**.

---

substantive-unreasonableness argument is properly addressed as a challenge to the procedural reasonableness of his sentence.  See United States v. Sanchez-Leon, 764 F.3d 1248, 1268 n.15 (10th Cir. 2014) ("[P]rocedural error is the failure to consider all the relevant factors, whereas substantive error is when the district court imposes a sentence that does not fairly reflect those factors." (alterations and quotations omitted)).  Accordingly, we reject his substantive-unreasonableness challenge.

Additionally, Begay argues in a footnote that "the issue raised in this case is tantamount to an equal protection violation as it raises . . . concerns of injustice based on immutable characteristics."  He provides no further explanation in support of this assertion.  Because this argument is insufficiently developed, we decline to consider it.  See Bronson v. Swensen, 500 F.3d 1099, 1104 (10th Cir. 2007) (issues omitted from or inadequately presented in opening brief are waived).