**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**October 4, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DALCO GABRIEL WHITEMAN,

    Defendant - Appellant.

No. 21-8095
(D.C. No. 2:20-CR-00121-SWS-1)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **McHUGH**, and **ROSSMAN**, Circuit Judges.
_____

Dalco Gabriel Whiteman appeals the final judgment in his criminal case,

challenging his convictions for multiple counts of aggravated sexual abuse and

abusive sexual conduct and his 852-month prison sentence.  Exercising jurisdiction

pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.      **Background**

In 2020, a grand jury charged Mr. Whiteman with seven counts of sexual abuse against seven different victims in Indian country.[1]  The timing of the charged offenses spanned from 1988 to 2013.  Each of the alleged victims was a minor at the time of the offense, and several of them were under age 12.

Mr. Whiteman was tried by a jury.  The government presented expert testimony by a licensed psychologist regarding the general dynamics of sexual abuse, the general characteristics of victims of sexual abuse, and the general characteristics of sex offenders.  Each of the alleged victims testified.  Mr. Whiteman sought to undermine the accuracy of the victims' memories and suggested they were motivated to lie.  Mr. Whiteman testified and denied all the allegations.  He also presented witnesses who testified about his good character and the victims' motives to lie.

The jury convicted Mr. Whiteman on Counts 1-5 and 7.[2]  The district court sentenced him to 852 months' imprisonment (71 years), plus 15 years' supervised release.

II.     **Discussion**

On appeal, Mr. Whiteman challenges the district court's failure to give a limiting instruction before the expert's testimony and the wording of the instruction

---

[1] The grand jury charged Mr. Whiteman with violations of 18 U.S.C. §§ 2241(c), 2244(a)(5), 2244(b), 2246(2)(D), 2246(3), and 1153.

[2] On the government's motion, the district court dismissed Count 6 for lack of evidence.

the court ultimately gave the jury after the close of the evidence. He also contends that his prison sentence is substantively unreasonable and the court abused its discretion in denying his request for a downward variance.

### A.    Limiting Instruction on Expert Witness Testimony

Prior to trial, Mr. Whiteman moved to exclude testimony by the government's expert witness.[3] He argued the purpose of the testimony was to impermissibly bolster and vouch for the victims' credibility. The district court denied the motion. Among other findings, the court concluded that the expert's testimony was not precluded by Federal Rule of Evidence 403 because it was highly probative and the risk of unfair prejudice was small because its purpose was to inform and educate the jury on topics beyond the common knowledge of the average person—specifically victim and abuser behavior—rather than to offer any particular conclusion.

But the district court placed limits on the expert's testimony. He was not to comment on the credibility of any witness. He was precluded "from placing any mathematical figures, percentages, likelihoods, or estimates on the rate of false accusations by alleged child victims." R., Vol. 1 at 194. And in light of the fact the expert had not interviewed anyone involved in the case, his testimony had to remain generic: he could "not offer any opinions about how his testimony might relate to the facts of Mr. Whiteman's case." *Id.* (brackets and internal quotation marks omitted).

---

[3] Mr. Whiteman raises on appeal only instructional errors with regard to the expert's testimony. He does not challenge the district court's admission of that testimony. We discuss the denial of his motion to exclude the expert's testimony and his continuing objections to it for context only.

At a conference before the trial, Mr. Whiteman renewed his objection to the expert's testimony as vouching for the victims. The district court granted him a continuing objection as to vouching issues. The court also stated it would instruct the jury before the expert's testimony that its purpose was "limited solely to educate them on some of the nature and circumstances involving or arising with regards to sexual abuse victims. Whether it's applicable to these alleged victims is solely a determination that the jury and the jury alone will make regardless of any expert." *Id.*, Vol. 4 at 36.

The government called the expert as its first witness. Contrary to its statement before trial, the district court did not give a limiting instruction to the jury before the expert's testimony. Mr. Whiteman did not object or ask for an instruction at that time.

At one point during the expert's testimony, the district court interrupted when he began to describe a study of 560 children. In a sidebar with counsel, the court reiterated its direction that the expert was precluded from addressing percentages regarding false accusations. Mr. Whiteman renewed his objection to the expert's testimony at that time.

Later in his testimony, when asked what factors a sex offender might consider in choosing a victim, the expert stated, "Some have an age category, that they may have a preference for 6 to 9-year-olds or . . . 11- to 12-year olds or 15 . . . ." *Id.* at 193. Mr. Whiteman objected, asserting that the expert was "vouching for everything that is being said here. . . . He's wanting to give specific numbers and specific ages,

4

and . . . I believe it's irrelevant.  I believe it's more prejudicial than probative, and I don't believe it's helpful." *Id.*  The government responded that the expert was addressing "age targeting," and that the ages he mentioned were not related to the victims in the case, whose ages the expert did not know.  *Id.* (internal quotation marks omitted).  The district court overruled the objection, concluding the expert could properly testify "as to characteristics and types of behavior that are common in a generic sense." *Id.* at 194.

During the final instruction conference, the district court offered the following limiting instruction regarding the expert's testimony:

> You heard the testimony of Dr. Frederick Lindberg concerning matters such as delay in reporting alleged abuse, grooming and maintenance behavior, traumatic bonding, lack of resistance to alleged abuse, potential effects of sexual abuse on victims, accommodation by an alleged victim, and possible characteristics and types of sex offenders. Dr. Lindberg did not know any details about this case or interact with the Defendant or alleged victims in this case.  His testimony was admitted only for informational purposes to help you evaluate other testimony in this trial.

> It is solely up to you to decide the facts of this case. Remember that you alone decide how much of a witness's testimony to believe and how much weight it deserves.

*Id.*, Vol. 1 at 390.  Mr. Whiteman objected once again that the expert's testimony had "vouch[ed] for the believability of . . . the alleged victims." *Id.*, Vol. 4 at 764.  He then objected to the proposed instruction, stating only that "it seems to me that this instruction imbues credibility upon" the expert.  *Id.*  The district court overruled the objection, concluding the instruction was necessary to properly limit consideration of the expert's testimony to "a discussion of the characteristics and, in a generic sense, the impacts of sexual abuse and/or sex offenders." *Id.*  The court again granted Mr. Whiteman a

5

continuing objection to anything related to the expert.  It delivered the limiting instruction to the jury, as proposed, along with the other instructions.  The jury returned guilty verdicts on Counts 1-5 and Count 7.

On appeal, Mr. Whiteman argues the district court erred by (1) failing to deliver a limiting instruction before the expert witness testified, and (2) giving the limiting instruction as phrased after the close of the evidence.

### 1.      Standard of Review

We review the jury instructions de novo and view them in the context of the entire trial to determine if they accurately state the governing law and provide the jury with an accurate understanding of the relevant legal standards and factual issues in the case.  In doing so, we consider whether the district court abused its discretion in shaping or phrasing a particular jury instruction and deciding to give or refuse a particular instruction.

*United States v. Christy*, 916 F.3d 814, 854 (10th Cir. 2019) (citation, brackets, ellipsis, and internal quotation marks omitted).  "An abuse of discretion occurs when a judicial determination is arbitrary, capricious or whimsical.  We will not overturn a discretionary judgment by the trial court where it falls within the bounds of permissible choice in the circumstances."  *United States v. Shumway*, 112 F.3d 1413, 1419 (10th Cir. 1997) (citation and internal quotation marks omitted).

Under Federal Rule of Criminal Procedure 30(d), "[a] party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate."  A "[f]ailure to object in accordance with this rule precludes appellate review, except as permitted under Rule 52(b)."  *Id.*  Federal Rule of

Criminal Procedure 52(b) provides that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention."

### 2. Failure to Give Limiting Instruction Before Expert's Testimony

Mr. Whiteman asserts that, contrary to the district court's statement in conference before the trial that it would do so, it "neglected to" give a limiting instruction to the jury prior to the expert's testimony. Aplt. Opening Br. at 19. The government argues this issue must be reviewed only for plain error because Mr. Whiteman did not object to the court's failure to give such an instruction at that time. Mr. Whiteman does not dispute the government's assertion. He points to no place in the record where he objected to the district court's failure to instruct the jury before the expert's testimony. Mr. Whiteman therefore prevented the district court from "correct[ing] any instructional mistake[]," thereby "avoid[ing] the burdens of an unnecessary retrial." *Jones v. United States*, 527 U.S. 373, 387-88 (1999). Thus, our review is for plain error. *See United States v. Banks*, 761 F.3d 1163, 1195-96 (10th Cir. 2014) (reviewing for plain error contention regarding the timing of a curative instruction when defendant failed to make a contemporaneous objection).

But Mr. Whiteman fails to argue for plain error review. He does not mention that standard in his opening brief. Nor does he address it in his reply brief, even after being alerted to the issue by the government. *See United States v. Leffler*, 942 F.3d 1192, 1199 (10th Cir. 2019) ("In response to the Government's brief, Defendant does not even address the preservation issue—much less attempt to argue he preserved his

claim for review on appeal."). Consequently, because Mr. Whiteman "fails to argue plain error in his briefing, his argument fails." *United States v. Cushing*, 10 F.4th 1055, 1077 (10th Cir. 2021) ("The failure to argue for plain error and its application on appeal surely marks the end of the road for an argument for reversal not first presented to the district court." (brackets and internal quotation marks omitted)), *cert. denied*, 142 S. Ct. 813 (2022).

### 3.    Error in Limiting Instruction Regarding Expert Testimony

The limiting instruction the district gave after the close of the evidence began as follows: "You heard the testimony of Dr. Frederick Lindberg concerning matters such as delay in reporting alleged abuse, grooming and maintenance behavior, traumatic bonding, lack of resistance to alleged abuse, potential effects of sexual abuse on victims, accommodation by an alleged victim, and possible characteristics and types of sex offenders." R., Vol. 1 at 442. Mr. Whiteman argues this portion of the instruction—which he characterizes as labeling and summarizing the expert's theories—was erroneous because it "implied to the jury that the court considered the subjects of Dr. Lindberg's testimony . . . to be established, valid scientific facts and theories that supported the victims' testimony and hence their credibility." Aplt. Opening Br. at 20. He contends that the court should have instead instructed the jury, consistent with its wording during the conference before trial, that the purpose of the expert's testimony was "limited solely to educate them on some of the nature and circumstances involving or arising with regards to sexual abuse victims." R., Vol. 4

at 36. Mr. Whiteman did object to the district court's proposed limiting instruction before the jury retired to deliberate.[4]

We agree with the government that the jury instructions, as a whole, "provide[d] the jury with an accurate understanding of the relevant legal standards and factual issues in the case." *Christy*, 916 F.3d at 854 (internal quotation marks omitted). And Mr. Whiteman fails to show that the district court's phrasing of the limiting instruction regarding the expert's testimony amounts to an abuse of discretion. *See id.* Although the instruction listed the topics of the expert's testimony, it did so using terms including "alleged," "potential," and "possible." R., Vol. 1 at 442. This belies Mr. Whiteman's assertion that, simply by describing the

---

[4] An objection to a jury instruction "must inform the court of the specific objection and the grounds for the objection." Fed. R. Crim. P. 30(d). "[T]he heart of the rule" is that objections must be made "with sufficient specificity and distinctness." *United States v. Agnew*, 931 F.2d 1397, 1401 n.3 (10th Cir. 1991) (internal quotation marks omitted). In objecting to the district court's proposed limiting instruction, Mr. Whiteman stated only that "it seems to me that this instruction imbues credibility upon" the expert. R., Vol. 4 at 764. He did not elaborate on how the instruction did so, he did not point to the language he now challenges, nor did he offer alternative language. It is uncertain whether Mr. Whiteman's objection adequately apprised the district court of the specific ground on which he now challenges the limiting instruction. *See United States v. Bedford*, 536 F.3d 1148, 1153 n.4 (10th Cir. 2008) (noting defendant's "objection did not rise to the level of specificity required to preserve the precise issue he raises on appeal"); *United States v. Luke-Sanchez*, 483 F.3d 703, 706 (10th Cir. 2007) ("A party's objection to a jury instruction must be sufficiently clear such that the grounds stated in the objection are obvious, plain, or unmistakable." (brackets and internal quotation marks omitted)).

But the government does not argue that Mr. Whiteman failed to preserve this issue in the district court; it has therefore forfeited the opportunity to do so. *See United States v. Faust*, 795 F.3d 1243, 1252 (10th Cir. 2015).

content of the expert's testimony, the district court placed its imprimatur on those subjects, imbued the expert's testimony with credibility, or implied its acceptance of the expert's theories. Furthermore, the limiting instruction cautioned that the jury alone would decide the facts of the case, including "how much of a witness's testimony to believe and how much weight it deserves." *Id.* The court reiterated that caution in other instructions. *See id.* at 408, 434.

In addition, the district court's limiting instruction regarding the expert's testimony directly followed its more general instruction on opinion testimony, which stated that "[a] witness who has knowledge, skill, experience, training, or education may testify and state an opinion concerning such matters." *Id.* at 441. But the court clearly instructed that the jury alone must decide the weight accorded such testimony:

> You are not required to accept such an opinion. You should consider opinion testimony just as you consider other testimony in this trial. Give opinion testimony as much weight as you think it deserves, considering the education and experience of the witness, the soundness of the reasons given for the opinion, and other evidence in the trial.

*Id.*

We hold, contrary to Mr. Whiteman's contention, that the district court's limiting instruction did not vouch for the credibility of the expert or the victim witnesses. He fails to show that the wording used was "arbitrary, capricious or whimsical," or that it exceeded "the bounds of permissible choice in the circumstances." *Shumway*, 112 F.3d at 1419 (internal quotation marks omitted). Moreover, the instructions as a whole clearly informed the jury that it alone would determine the credibility of *all* of the witnesses.

### B.    Substantive Reasonableness of Sentence

Mr. Whiteman argues his 852-month prison sentence is substantively unreasonable and the district court abused its discretion in denying his motion for a downward variance.

At sentencing, the court calculated Mr. Whiteman's total offense level as 43 and his criminal history category as I.  It discussed the minimum and maximum sentences applicable to each offense, then concluded that, under the advisory guidelines, Mr. Whiteman was subject to the following imprisonment terms:  life on Counts 1 and 2; 120 months on Counts 3 and 4; 240 months on Count 5; and 24 months on Count 7.  The government argued "that to promote respect for the law, to reflect the seriousness of this offense, and to be just punishment for these offenses, the sentence should take the number of victims and the span of time the Defendant's crimes covered into account."  R., Vol. 4 at 842-43.  It asked the court to impose consecutive sentences consistent with the advisory guidelines ranges and statutory minimum sentences.

Mr. Whiteman requested a variant sentence of a total of 30 years' imprisonment on all counts.  He pointed to his age (54 years), his ailing health, his lack of previous criminal history, his military service, his productive membership in his tribe, and his marriage and parenting history.  He also asserted the weakness of the case against him and the lack of physical injury to the victims.  Mr. Whiteman's sister spoke, asking the court to show lenience.  Mr. Whiteman allocuted, reiterating his denial of the charges.

In imposing Mr. Whiteman's sentence, the district court noted he stood convicted of six counts of aggravated sexual abuse involving six separate victims, following a trial by jury that the court believed was fair. It pointed to the evidence of the nature, significance, and longevity of the harm the victims suffered, as well as Mr. Whiteman's conduct. It touched on his military service and the timing of the victim's disclosures. The court ultimately stated it did not believe "that a sentence . . . collectively[] as to all victims in this matter is appropriate" because their "harms and circumstances are separate and distinct" and they each "should have the consequences and the unfortunate impact upon them recognized." *Id.* at 863. It therefore concluded that consecutive sentences should be imposed as to each count. The court then sentenced Mr. Whiteman to consecutive prison sentences as follows:

Count 1 – 30 years
Count 2 – 30 years
Count 3 – 42 months
Count 4 – 36 months
Count 5 – 36 months
Count 7 – 18 months

for a total sentence of 852 months or 71 years. The court stated this sentence was sufficient but not greater than necessary to accomplish the objectives of 18 U.S.C. § 3553(a).

Mr. Whiteman objected to the consecutive nature of the sentencing, arguing it was much greater than necessary considering his age and health. Without elaboration, he also objected "under the factors of [§] 3553(a)." *Id.* at 868. Overruling that objection, the district court stated, "Based upon the nature and

12

characteristics of the crimes committed and the victims, [and] in consideration of the circumstances," it had sentenced Mr. Whiteman "at the low end of the mandatory minimum" on Counts 1 and 2, and "far below the guideline sentence" on the remaining counts, adding that "the consecutive nature of those sentences" was appropriate "in consideration of [§] 3553(a) as well as [§] 3553(b)." *Id.*

### 1.    Standard of Review

Our review is for an abuse of discretion. *See United States v. Beltran*, 571 F.3d 1013, 1018 (10th Cir. 2009) (request for variance); *United States v. Balbin-Mesa*, 643 F.3d 783, 787 (10th Cir. 2011) (substantive reasonableness). "Our appellate review for reasonableness includes . . . a substantive component, which relates to the length of the resulting sentence." *Balbin-Mesa*, 643 F.3d at 787 (internal quotation marks omitted). "[A] challenge to the sufficiency of the § 3553(a) justifications relied on by the district court implicates the substantive reasonableness of the resulting sentence. To determine the substantive reasonableness of a sentence, we look at the totality of the circumstances." *Id.* (citation and internal quotation marks omitted). In doing so, "we afford substantial deference to the district court." *Id.* at 788 (internal quotation marks omitted).

Mr. Whiteman does not dispute that the court properly calculated and considered the applicable guidelines ranges. His sentence is therefore presumptively reasonable on appeal. *See id.* "[T]he presumption of reasonableness is a commonsense reflection of the respective roles of district court, appellate court, and Sentencing Commission in the determination of the appropriate punishment in a

13

particular case." *Id.* at 788 n.4 (internal quotation marks omitted). Mr. Whiteman argues the circumstances in his case rebut the presumed reasonableness of his sentence. We disagree.

### 2.    Unnecessarily Long Sentence

Mr. Whiteman asserts that, although the district court departed from the guidelines by not imposing a life sentence, an 852-month sentence for a 54-year-old man equates to a life sentence. He argues this sentence is far greater than necessary to reflect the seriousness of his offenses, to provide for just punishment, and to have a general deterrent effect. Mr. Whiteman contends that concurrent sentences would have provided ample time for him to obtain available correctional treatment, and if he is released in his mid-80s, the public will have been and will continue to be protected from further crimes, particularly in light of the exacting conditions imposed for his supervised release. He maintains that a 30-year total sentence would be a significant punishment and would send a sufficient message regarding the seriousness of his crimes. He further argues the sentence imposed will only remove him from society for the remainder of his life and will not correct or rehabilitate him. Finally, Mr. Whiteman points to his military service, his productive membership in his tribe, and the continuing support from his family.

These contentions "are nothing more than a disagreement with the district court about how the evidence should be evaluated and weighed." *United States v. Branson*, 463 F.3d 1110, 1112 (10th Cir. 2006). In particular, Mr. Whiteman ignores the district court's focus on the number of victims and the significant harms they

each have suffered.  On appeal, we consider only "whether the sentence fell within the range of rationally available choices that facts and the law at issue can fairly support."  *United States v. Blair*, 933 F.3d 1271, 1274 (10th Cir. 2019) (internal quotation marks omitted).  Here, Mr. Whiteman's discussion of various factors that might weigh in favor of a shorter sentence fails to show that the sentence imposed does not fall within that range.

### 3.     Sentence Disparity

Mr. Whiteman contends his sentence does not fairly reflect the sentencing factor in 18 U.S.C. § 3553(a)(6), which requires a sentencing court to "consider . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  Citing statistics on the average sentence length for sexual abuse offenders in a Sentencing Commission publication, Mr. Whiteman points to longer average sentences for Native Americans subject to mandatory minimum penalties as compared to other races.[5]  He asserts these statistics equate to a significant and unwarranted disparity between his sentence and the sentences of non-Native American sexual abuse offenders in the federal system.  But Mr. Whiteman acknowledges that the cited statistics include a very small percentage of offenders who, like him, were convicted of offenses with

---

[5] *See* U.S. Sentencing Comm'n, Mandatory Minimum Penalties for Sex Offenses in the Federal Criminal Justice System 28 (January 2019), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2019/20190102_Sex-Offense-Mand-Min.pdf

mandatory minimum sentences of twenty years or more. And he fails to indicate what, if any, portion of those offenders were convicted of multiple sexual abuse crimes involving multiple victims over a 25-year time span. Without more, these statistics fail to show that Mr. Whiteman's sentence is substantively unreasonable due to an unwarranted sentence disparity "among defendants with similar records who have been found guilty of similar conduct." § 3553(a)(6).

Mr. Whiteman further argues that, had he been convicted in state court in Wyoming for sexual abuse of a minor, his maximum sentence would be 20 years' imprisonment on a single count under Wyoming law, *see* Wyo. Stat. Ann. § 6-2-315(b), as compared to the 30-year mandatory minimum and advisory guidelines life-imprisonment sentences on Counts 1 and 2 for his offenses committed in Indian country. According to Mr. Whiteman, this, too, equates to a significant and unwarranted sentencing disparity under § 3553(a)(6). But we have rejected such a proposition, holding "that a disparity between the federal-court sentence and the sentence that would be imposed for a like offense in state court does not make the sentence unreasonable." *Branson*, 463 F.3d at 1110. This is so because "[a]djusting federal sentences to conform to those imposed by the states where the offenses occurred would not serve the purposes of § 3553(a)(6) but, rather, would create disparities within the federal system." *Id.* at 1112. Thus, Mr. Whiteman's argument, which is based entirely on § 3553(a)(6), is foreclosed by *Branson*. *See United States v. Begay*, 974 F.3d 1172, 1176-77 (10th Cir. 2020).

16

Mr. Whiteman fails to demonstrate that his sentence is substantively unreasonable or that the district court abused its discretion in denying his request for a downward variance.

## III.    Conclusion

We affirm the district court's judgment.

Entered for the Court


Carolyn B. McHugh
Circuit Judge