**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 25, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

GEOFFREY WARD MANSFIELD,

    Defendant - Appellant.

No. 24-1312
(D.C. No. 1:18-CR-00466-PAB-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **FEDERICO**, **BALDOCK**, and **MURPHY**, Circuit Judges.

_____

After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument.

Geoffrey Mansfield admitted to multiple violations of the terms of his supervised release. The district court revoked Mansfield's supervised release, sentenced him to a downward-variant term of imprisonment of eighteen months, and ordered him to serve an additional eighteen-month term of supervised release.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Mansfield appeals, asserting his term of imprisonment is substantively unreasonable. This court exercises jurisdiction pursuant to 28 U.S.C. 1291 and 18 U.S.C. § 3742(a) and **affirms**.

Mansfield pleaded guilty to being a felon illegally in possession of a firearm. *See* 18 U.S.C. § 922(g)(1). The firearm at issue was an AK-47 style rifle Mansfield sold to a confidential informant. Mansfield's § 922(g)(1) conviction was his fourth felony conviction. He also has multiple non-felony convictions and was on probation at the time he committed the § 922(g)(1) offense. The district court sentenced Mansfield to three years' imprisonment and three years of supervised release.

During the term of Mansfield's term of supervision, the U.S. Probation Office filed with the district court a superseding petition, asserting Mansfield committed nine violations of the terms of his supervised release. The petition asserted Mansfield failed to reside in and comply with the rules of the Residential Reentry Center (RRC), used methamphetamine on four separate occasions, failed to participate in substance abuse or mental health treatment, failed to participate in substance abuse testing, and failed on two different occasions to notify his probation officer of a change in employment. The Probation Office then filed a Supervised Release Violation Report. The Violation Report noted Mansfield's highest grade of violation was a Grade B and calculated Mansfield's Sentencing Guidelines range to be 21 to 24 months' imprisonment. *See* U.S.S.G. § 7B1.4(a) (Revocation Table) (setting out an advisory sentencing range of twenty-one to twenty-seven months' imprisonment for a

Grade B violation and a Criminal History Category VI). The Probation Office recommended eighteen months of imprisonment.

The Violation Report stated Mansfield performed well at the onset of supervision while living at the RRC, but regressed within a short time after moving to his own apartment. Mansfield was thereafter fired from his job for misconduct, used alcohol and methamphetamines, had difficulty obtaining other employment and meeting his financial needs, and was eventually evicted from his apartment. He missed treatment sessions as well as scheduled and random drug testing. He did not report his employment changes as required and was not open about his relapse and struggles. Mansfield was offered another placement at RRC. He did not report for the placement and, instead, absconded for about one year. As justification for the recommended downward-variant sentence, the Violation Report indicated Mansfield "has a significant history of failure to comply with prior terms of community supervision" and "a long-documented history of alcohol and methamphetamine abuse." The Violation Report also noted Mansfield has been diagnosed with schizoaffective disorder, bipolar disorder, PTSD, and intermittent explosive disorder. Mansfield has been afforded substance abuse treatment and interventions through inpatient, outpatient, and drug court, but his attendance and participation in outpatient counseling while on supervised release "was poor." The Violation Report concluded Mansfield's mental health and substance abuse issues "continue to limit" his "ability for success if not properly treated and consistently addressed."

Mansfield did not file any objections to the superseding petition or Violation Report. He did, however, file a Sentencing Statement in advance of his revocation hearing. The statement mostly cataloged his health issues, including congestive heart failure, atrial fibrillation, and a staph infection that was resistant to antibiotics. Rather than revoking his supervision, Mansfield requested "intensive drug treatment," either in an RRC or in his elderly mother's home.

At the revocation hearing, Mansfield admitted he failed to report and reside in the RRC (violation 1), used methamphetamine on four separate occasions (violations 2-5), and failed to provide urine samples (violation 7). The government then dismissed the remaining alleged violations. The district court determined the highest grade of violation was a Grade B violation; Mansfield had a Criminal History Category of VI; and his advisory guidelines sentencing range was, thus, 21 to 24 months' imprisonment. *See* U.S.S.G. § 7B1.4(a) (Revocation Table). Mansfield did not object to these determinations.

After the parties' arguments and Mansfield's allocution, the district court varied downward from the Guidelines range and sentenced Mansfield to eighteen months' imprisonment and eighteen months of supervised release. It explained that in fashioning a sentence, it considered Fed. R. Crim. P. 32.1 and the factors set forth in 18 U.S.C. § 3583(e). It noted Mansfield started off well on supervised release, "[b]ut unfortunately when he got a little bit more freedom after moving out of the RRC, his progress regressed." Mansfield was fired from his job at Goodwill, he relapsed, he "was using alcohol, which is his life-long problem," and he was also using

methamphetamine. The court pointed out Mansfield was then evicted from his apartment, missed "all sorts of appointments" with his probation officer, became homeless, and ultimately absconded from supervision. Mansfield's primary health problem, according to the district court, was homelessness and drug abuse. It concluded the prison environment would promote Mansfield's health because "the healthcare that he gets in prison, or in custody, is a lot better than he would be getting if he's homeless and if he returns to drug and alcohol abuse." In so concluding, the district court rejected Mansfield's request that his supervision be continued and he be placed in the home of his elderly mother. It recognized there were no facilities available in that location, which would leave him unsupervised.[1] The court credited Mansfield with seeking some type of inpatient treatment and indicated that a further term of supervision following his sentence would "hopefully give [Mansfield] an opportunity to address his various types of addiction issues." Nevertheless, the

---

[1] The district court noted as follows:

Mr. Mansfield is requesting . . .to live with his mother. That's totally inappropriate. We don't have any facilities in Craig . . . . I really appreciate his mother being here. She is really dedicated to Mr. Mansfield and she was here during the trial; she's here today.

[] Mr. Mansfield is lucky he has that type of family support, so that's really good. So it's nothing to do with her, of course, it's rather the location and the fact that, you know, we wouldn't have Mr. Mansfield who has a—you know, he just admitted to a number of violations where he couldn't comply with terms and conditions of supervision in a structured environment, the last thing we would do is put him with his mother in an unsupervised environment and expect that he would be able to do well. Like I said, nothing against his mother; it's just that wouldn't be an appropriate form of supervision.

district court concluded eighteen months' imprisonment was appropriate given Mansfield's "violations of trust" after initial placement on supervised release and "his numerous failures" which he admitted to the court.

Mansfield asserts the district court's eighteen-month downward-variant sentence is substantively unreasonable because it is unduly harsh. He asserts this was the first time he violated the terms of his supervision and his violations were nonviolent; his violations were not willful but, instead, the result of his drug and alcohol addictions; his incarceration is at odds with his numerous and serious medical conditions; and his prior reentry to society was hampered by his lack of family support in the physical area of supervision. This court reviews the substantive reasonableness of a sentence for abuse of discretion. *United States v. Smart*, 518 F.3d 800, 805-06 (10th Cir. 2008). This standard is satisfied only if the district court's chosen sentence is "arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. Gantt*, 679 F.3d 1240, 1249 (10th Cir. 2012) (quotation omitted). A downward variant sentence is entitled to a rebuttable presumption of reasonableness. *United States v. Balbin-Mesa*, 643 F.3d 783, 788 (10th Cir. 2011). Substantive reasonableness "contemplates a range, not a point," and this court recognizes a range of "rationally available choices" that the facts and law can fairly support. *United States v. Martinez*, 610 F.3d 1216, 1227 (10th Cir. 2010) (quotations omitted).

Mansfield's downward variant sentence of eighteen months' imprisonment is entirely reasonable. Given Mansfield's extensive criminal history and historic inability to perform well under supervised release or community supervision, the

6

district court reasonably concluded Mansfield's breach of trust necessitated a significant term of imprisonment. 18 U.S.C. § 3553(a)(1), (a)(2)(A). Those same facts reasonably support the conclusion a term of incarceration was necessary to deter Mansfield from further criminal conduct, to protect the public from further violations of the law, and to provide Mansfield with needed medical care. *See id.* § 3553(a)(2)(B)-(D). Mansfield's arguments to the contrary amount to "nothing more than a disagreement with the district court about how the evidence should be evaluated and weighed." *United States v. Branson*, 463 F.3d 1110, 1112 (10th Cir. 2006). [2] The district court thoroughly considered Mansfield's arguments for leniency and reasonably concluded a lesser sentence, let alone a noncustodial sentence, would be at odds with the factors set out in § 3553(a). This court "must give due deference to the district court's decision that the § 3553(a) factors, [as] a whole, justify the" sentence imposed. *Smart*, 518 F.3d at 808 (quotations omitted).

---

[2] As noted above, the record reveals as follows: (1) Mansfield has an extensive criminal history and "a significant history of failure to comply with prior terms of community supervision"; (2) Mansfield has been afforded substance abuse treatment and interventions through inpatient, outpatient, and drug court, but his attendance and participation in outpatient counseling while on supervised release "was poor"; (3) Mansfield's homelessness and addiction contributed to his health issues and his medical care would improve during incarceration; and (4) there were no facilities to allow supervision in his mother's hometown.

Under the facts and circumstances of this case, Mansfield has not come close to rebutting the presumption his below-Guidelines sentence is substantively reasonable. Accordingly, the district court's sentence is hereby **AFFIRMED**.

Entered for the Court

MICHAEL R. MUPRHY
Circuit Judge